UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

In re:                                                        Chapter   11

RAMIRO CARDENAS,                                              Case No. 18-40585-ess

                    Debtor

--------------------------------------------------------------X
RAMIRO CARDENAS,
                    Plaintiff,                          Case No.

      -against-

BORIS ZEOROV,
                    Defendant.
--------------------------------------------------------------x

## COMPLAINT

RAMIRO CARDENAS, (the "Plaintiff") herein, by and through his attorney,

Phillip Mahony, Esq., respectfully submits this as and for his complaint (the "Complaint")

against Boris Zeorov (the "Defendant") and states as follows:

## PRELIMINARY STATEMENT

This adversary proceeding relates to the underlying chapter 11 bankruptcy case of

Ramiro Cardenas as Debtor and Debtor in Possession and seeks to nullify as fraudulent the transfer

of 50% of Plaintiff and his wife's interest in their investment property located at 75-60 187th Street,

Fresh Meadows NY 11366 (the "Fresh Meadows Property") to the Defendant in exchange for

$10,000 on December 23, 2016.

## THE PARTIES

1.      The Plaintiff is the Chapter 11 Debtor.

2.      Amparo Ruiz is Plaintiff's wife. She resides with the Debtor at 31-65 23rd

1

Street, Astoria New York 11106 (the "Astoria Property").

3.      Upon information and belief, the Defendant is an individual with a mailing address of 75-63 187th Street in Fresh Meadows, New York.

## JURISDICTIONAL PREDICATE

4.      The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334.

5.      This adversary proceeding is related to the above captioned bankruptcy proceeding pending in the Bankruptcy Court for the Eastern District of New York and is a "core proceeding" as that term is defined in 28 U.S.C. § 157(a), (b)(1) and (b)(2)(A).

6.      The United States Bankruptcy Court for the Eastern District of New York is the proper venue for this proceeding in accordance with 28 U.S.C. §§ 1408 and 1409(a).

7.       The statutory predicate for the relief requested herein is 11 U.S.C. Sections 105, 544, 547, 548 and 550; New York Debtor and Creditor Law Sections 270-279, and common law principles of fraud and unjust enrichment and fiduciary obligations.

8.      In the event that this Court determines that this cause of action, as alleged herein, is not a core proceeding, the Plaintiff consents to the entry of final orders and judgment by this Court determining such causes of action.

## STATEMENT OF FACTS

9.      This case was commenced by the filing of a voluntary petition on January 31, 2018 (the "Filing Date") pursuant to Chapter 13 of title 11 of the United States Code (the "Bankruptcy Code").

2

10.     On June 27, 2018 the case was converted to Chapter 11 (the "Conversion Date").

11.     Plaintiff and his wife purchased the Fresh Meadows Property on or about January 9, 2003. The Fresh Meadows Property was initially used by the Plaintiff, his wife and his son Rodrigo as their primary residence. The Plaintiff's daughter lived in the Astoria Property, which also housed rental tenants on the second and third floor.

12.     In early 2016 the Plaintiff and his wife, having fallen behind on the mortgage payments for both the Astoria Property and the Fresh Meadows Property, entered into negotiations with a company called Settle NY of 116-55 Queens Blvd, Ste 206, Forest Hills NY 11375 to short-sell the Fresh Meadows Property.

13.     On information and belief, the deal fell apart when a $10,000 good faith payment to the Plaintiff from Settle NY was rejected at their bank for insufficient funds.

14.     On information and belief, Plaintiff and his wife were first approached by Defendant about buying the Fresh Meadows Property when the Settle NY deal fell apart. Plaintiff states Defendant convinced Plaintiff and his wife to sell the Fresh Meadows Property to him. The agreed-upon terms of the proposed sale were that the Defendant would pay off the two existing mortgages on the Fresh Meadows Property and would pay Plaintiff and his wife $150,000 over and above the mortgage payoffs. The Defendant and the Plaintiff and his wife agreed to those terms, with the Defendant giving a $10,000 down payment to the Plaintiff and his wife to be held until closing.

15.     On or about December 23, 2016 Debtor states that he and his wife met with the Defendant, received a $10,000 personal check from Defendant's bank account

and executed what they thought was an agreement to sell the Defendant the Property under the above terms. Plaintiff and his wife were represented by an attorney who was recommended by the Defendant and whose contact information was given to them by the Defendant. Plaintiff states the attorney and the Defendant appeared to know each other and the attorney spent most of the meeting speaking with the Defendant, who otherwise did not have an attorney of his own.

16.     On January 14, 2017, the Defendant filed in the Office of the City Register of the City of New York under CRFN # 2017000004039 an Indenture between the Plaintiff and his spouse as party of the first part and the Plaintiff, his spouse and the Defendant as party of the second part, transferring 50% of Plaintiff's and his wife's interest in the Fresh Meadows Property to the Defendant. Attached to the filing is a one-page document titled "Bargain and Sale Deed with Covenants" and the subtitle "Grantor: Ramiro A. Cardenas and Amparo Ruiz to Grantee: Ramiro A. Cardenas, Amparo J. Ruiz and Boris Zeorov." In the upper left-hand corner is what appears to be a notary stamp and notary's signature attesting to the signatures of the Plaintiff and his wife, but no such signatures appear on the one-page document. A copy of the Indenture is attached hereto as Exhibit A.

17.     On information and belief, neither the Plaintiff nor his wife knew that the Defendant would file or filed this Indenture. It was their belief that the acceptance of the $10,000 was just the first stage of the closing process.

18.     On information and belief, the Defendant subsequently repeatedly postponed the date for the closing. The closing never occurred. It was only when the Plaintiff retained the undersigned to represent him in his bankruptcy filing that he found out that he had unknowingly transferred 50% interest in the Fresh Meadows Property to the

Defendant.

19.     On November 2, 2017 there was a fire in the Fresh Meadows Property which forced the Plaintiff, his wife and his son to move to the Astoria Property. Although repairs were made and the Fresh Meadows Property is now habitable, it has been vacant ever since.

20.     On January 31, 2018 the Plaintiff filed his bankruptcy petition.

21.     On June 28, 2018, an appraisal was conducted of the Fresh Meadows Property by a licensed appraiser, who valued it at $875,000. The appraisal is attached hereto as Exhibit B.

## AS AND FOR A FIRST CAUSE OF ACTION

22.     The Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "21" as if each were more fully set forth herein.

23.     The Plaintiff transferred 50% of the Property for the benefit of the Defendant to the detriment of the Plaintiffs bankruptcy estate. The transfer (the "Transfer") is a fraudulent conveyance pursuant to section 548(a)(B) of the Bankruptcy Code.

24.     Section 548(a)(B) states in part:

The trustee may avoid any transfer … of an interest of the debtor in property, … that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
  **(B)**
        **(i)** received less than a reasonably equivalent value in exchange for such transfer or obligation; and
        **(ii)**
            **(I)** was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
            **(II)** was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
            **(III)** intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
            **(IV)** made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

5

25.     A review of the facts shows that the Transfer met all the elements of a Fraudulent Transfer under Section 548(a)(B)(i) and (ii)(1).

26.     <u>The transfer was made within 2 years before the date of the filing of the petition</u>. Upon information and belief, the Transfer can be said to have taken place either when the contract of sale was allegedly signed on December 23, 2016, or when the transfer deed was recorded on January 14, 2017. Either way, the transfer was made or incurred within 2 years of the filing of the Filing Date (January 31, 2018).

27.     <u>The transfer was made "voluntarily or involuntarily.</u>" The Transfer was made involuntarily as a result of what appears to be a con perpetrated by the Defendant on the Plaintiff and his wife.

28.     The inclusion of the term "or involuntarily" implies that a fraudulent transfer does not have to be executed voluntarily or intentionally by the Defendant, but, as is the case at hand, could have been induced or forced upon the Plaintiff by another party, even, in at least one case, if that other party was a court of law.  *See In re Thrify Dutman*, Inc. 97 B.R.101 (Bkrtcy.S.D. Fla 1988) (The entry of a final judgment awarding Defendant Landlord rights, title and interested in a defaulted lease and all overdue rent with interest not only "rendered the Plaintiff insolvent" but met the other requirements for a fraudulent transfer and was therefore voidable.)

*29.*     The Supreme Court's decision in *BFP v Trust Resolution Corp* (511 U.S. 531 (1994) appears to establish some parameters as to what might constitute an involuntary fraudulent transfer. In that case, the Plaintiff argued that the foreclosure sale of his property should be voided as fraudulent because it was sold at less than fair market value

6

at the foreclosure auction – which is typically the case – and he had therefore received less than a reasonably equivalent value in exchange for the transfer. The Court held that the value received for a property at a foreclosure sale can be reasonable even if it is different from the fair market value because the foreclosure sale alters market conditions and can lower a property's selling price. If a foreclosure sale is necessary to settle a debt, the Court held that the price at which the property is sold is reasonable so long as "all the requirements of the State's foreclosure law have been complied with." *Id.*

30.    Additionally, the Court in *BFP* held that as a matter of policy, reversing a foreclosure sale as a fraudulent transfer on the grounds of the homeowner receiving "less than equivalent value in exchange" could have wide spread repercussions because "[t]he title of every piece of realty purchased at foreclosure would be under a federally created cloud." *Id* at 544.

31.    The case at hand is distinguished from *BFP* because there were no factors present which may have altered market conditions and lowered the fair market value of the Fresh Meadows Property at the time of the Transfer. There are no mitigating factors in the case at hand which might have normalized the Plaintiff and his wife's having transferred 50% of their interest in the Fresh Meadows Property, which had been valued at $875,000, in exchange for $10,000, which is 2.28% what that interest was worth.

32.    Furthermore, reversing the transfer in the case at hand would not have the negative repercussions that the *BFP* Court warned against. On the contrary, using the fraudulent conveyance provisions of the Bankruptcy Code to undo a con perpetrated on a financially distressed homeowner could result in a greater awareness of how those provisions might be used to the advantage of Debtors who have been similarly victimized.

7

33.    <u>The Plaintiff received less than an equivalent value in exchange for</u> <u>such transfer.</u> The Plaintiff received $10,000 in exchange for 50% interest in the Fresh Meadows Property, which has been valued at $875,000. In essence, the Plaintiff transferred an interest in the Fresh Meadows Property worth $437,500 for approximately 2.28% of its value.

34.    <u>The Plaintiff was insolvent at the time the transfer was made or such</u> <u>transfer occurred or became insolvent as a result of such transfer.</u> "Insolvent" is defined in the Bankruptcy Code, in regard to an individual, as a "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of property transferred, concealed or removed with intent to hinder, delay or defraud such entity's creditors."

35.    Given that the Fresh Meadows Property was not transferred with intent to hinder, delay or defraud the Plaintiff's creditors, the Fresh Meadows Property would be included in a calculation of whether the Plaintiff was insolvent at the time of the Transfer.

36.    Insolvency is measured at the time of the Transfer, not the time of the Filing. Limited information is available as to the Plantiff's financial situation on the Transfer Date, but all indications are that on the Transfer Date his financial situation was virtually identical to what it was a year later on the Filing Date. For example:

- A copy of the Plaintiff's bank statements for the 12 months between the Transfer Date and the Filing Date shows that the balance in his checking account fluctuated steadily during that period between $500 and $3,000 and only a few times rose a few dollars above $4,000.

- The monthly payment amount on the first mortgage for the Fresh Meadows Property was

$3,298. The monthly payment amount on the second mortgage for the Fresh Meadows was $800. In the year between the Transfer Date and the Filing Date, only an additional combined $49,176 in debt ($4,098 per month for twelve months) would have accumulated from these properties. The Debtors Amended Official Form 106(Sum) (attached hereto as Exhibit C) shows that on the Filing Date, the Plaintiff's interest in property was worth $766.976.91, while his debt was nearly three times that much at $2,035,924.93. In other words, debts exceeded property by over $1.25 million. Even if the $49,176 post-Transfer Date debt from the two properties was subtracted, the Debtor would still have been insolvent on the Transfer Date.

- On information and belief, in the year between the Transfer Date and the Filing Date, the Plaintiff and his wife did not buy or sell any real property, or inherit or come into any significant income assets other than a check for $31,794 delivered to them by Nationwide Mutual Fire Insurance Company to cover the damages for the November 2, 2017 fire.

      37.    As noted above, it is unquestionable that the Plaintiff was insolvent on the Filing Date. The majority of the debt was comprised of:

- Income Tax Debt. Proofs of Claim # 1 and 3 (attached hereto as Exhibit D) were filed by the New York State Department of Taxation and Finance and the Internal Revenue Services respectively for income tax claims totaling $131,547.12 that accumulated up the end of December 2016, the time of the Transfer.

- Debt owed on the Astoria Property. Proof of Claim # 2 (attached hereto as Exhibit E) was filed on May 11, 2018 by Select Portfolio Servicing for a debt of $1,237,787.81 owed on the Astoria Property.

9

o     <u>Debt owed on the Fresh Meadows Property First Mortgage</u>. A payoff letter

provided by Santandar Bank (attached hereto as Exhibit F) dated November 10,

2017 shows the payoff amount on the Fresh Meadows Property was

$727,550.63.

o     <u>Debt owed on the Fresh Meadows Property Second Mortgage</u>. A payoff letter

provided by Real Time Resolutions (attached hereto as Exhibit G) dated April 4,

2018 shows the payoff amount on the Fresh Meadows Property was $82,302.

38.    Given the wide disparity between the Plaintiff's debt and property

that existed on the Filing Date, and given that there is every indication that that disparity

also existed a year earlier on the Transfer Date, it can be said with certainty that the Plaintiff

was insolvent on the Transfer Date. The Transfer therefore meets all the elements of an

involuntary fraudulent transfer and should be voided.

**WHEREFORE**, the Plaintiff demands that the transfer of 50% of his and his

wife's interest in the Fresh Meadows Property to the Defendant in exchange for $10,000 that took

place on or about December 23, 2016 and as recorded in the Office of the City Register of the City

of New York under CRFN # 2017000004039 on January 14, 2017, be voided as a fraudulent

transfer and that the Plaintiff , through his attorney, be authorized to file such documents with the

Office of the City Register of the City of New York as will formalize the voiding of such transfer,

along with such other and further relief that this Court deems just and proper under the facts and

circumstances herein.

Dated: Queens, New York
        September 12, 2018

*s/ Phillip Mahony*
Phillip Mahony,Esq.
Counsel for the   Plaintiff
Steinway Law Offices
21-83 Steinway Street
Astoria, NY 11105
mahonylaw@outlook.com
917-414-6795
FAX 844-269-2809